UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DINGMAN P.,

           Plaintiff,

v.                                                        5:22-CV-0203
                                                          (ML)
COMMISSIONER OF SOCIAL
SECURITY,

           Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LEGAL AID SOCIETY OF MID-NEW YORK, INC. SYRACUSE OFFICE<br>  Counsel for the Plaintiff<br>221 South Warren Street, Suite 310<br>Syracuse, New York 13202 | ELIZABETH LOMBARDI, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>  Counsel for the Defendant<br>6401 Security Boulevard<br>Baltimore, Maryland 21235 | GEOFFREY PETERS, ESQ.<br>Special Assistant U.S. Attorney |

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER

    Currently pending before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1]  Oral argument was heard

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18.  Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

1

in connection with those motions on July 13, 2023, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination was supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by Plaintiff in this appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is

**ORDERED** as follows:

1) Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is DENIED.

2) Defendant's motion for judgment on the pleadings (Dkt. No. 10) is GRANTED.

3) The Commissioner's decision denying Plaintiff Social Security benefits is AFFIRMED.

4) Plaintiff's Complaint (Dkt. No. 1) is DISMISSED.

5) The Clerk of Court is respectfully directed to enter judgment, based upon this determination, DISMISSING Plaintiff's Complaint in its entirety and closing this case.

Dated: July 19, 2023
     Binghamton, New York

_____
Miroslav Lovric
United States Magistrate Judge
Northern District of New York

```
UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK
_____
P

vs.                                    5:22-CV-203

COMMISSIONER OF SOCIAL SECURITY



_____




                DECISION AND ORDER


                  July 13, 2023


         The HONORABLE MIROSLAV LOVRIC,
            DISTRICT MAGISTRATE JUDGE




              A P P E A R A N C E S


For Plaintiff:      ELIZABETH LOMBARDI, ESQ.


For Defendant:      GEOFFREY PETERS, ESQ.


                  Ruth I. Lynch, RPR, RMR, NYSRCR
                  Official United States Court Reporter
                      Binghamton, New York  13901
```

1           THE COURT:  So the Court begins by indicating that
2   in this case Plaintiff has commenced this proceeding
3   pursuant to Title 42 U.S. Code 405(g) to challenge the
4   adverse determination by the Commissioner of Social Security
5   finding that Plaintiff was not disabled at the relevant
6   times and therefore ineligible for the benefits that she
7   sought.
8           By way of background, the Court notes as follows:
9   Plaintiff was born in 1972.  She is currently approximately
10  51 years of age.  She was approximately 42 years old on the
11  date of her application for benefits.  Plaintiff stands
12  approximately 5 feet 1 inch in height and weighs
13  approximately 139 pounds.
14          Plaintiff is originally from Burma, where she
15  attended school up to the eighth grade.  She has resided in
16  the United States since approximately 2004, and Plaintiff
17  testified that she had taken some classes here including
18  English lessons.  Plaintiff spoke and understood English but
19  utilized an interpreter for some of her administrative
20  hearings.  Plaintiff's prior employment included positions
21  as a kitchen worker in a restaurant and a laundry room
22  attendant at a nursing home.
23          Procedurally, in this case the Court notes the
24  following:  This case has a lengthy procedural history.
25  Plaintiff applied for Title II and Title XVI benefits on

1  April 11, 2014, alleging an onset date of October 8, 2013.
2  In support of her application for disability benefits,
3  Plaintiff claims disability based on a number of physical
4  and mental impairments including breast cancer, chest pain,
5  right arm pain, left shoulder pain, and depression.
6          Plaintiff's application was initially denied on
7  May 29, 2014.  Following a hearing, Administrative Law Judge
8  Elizabeth Koennecke issued an unfavorable decision on
9  May 24, 2016.  The Appeals Council remanded Plaintiff's
10 claim for additional consideration on June 27, 2017.
11 ALJ Koennecke held additional hearings and issued another
12 unfavorable determination on March 26, 2018.  After the
13 Appeals Council denied Plaintiff's request for review, on
14 April 5, 2019, Plaintiff commenced a proceeding in the
15 Northern District of New York.  On January 13th, 2020,
16 United States Magistrate Judge Andrew T. Baxter remanded the
17 case consistent with the parties' stipulation to remand the
18 matter.  Following the resulting remand order from the
19 Appeals Council, Plaintiff appeared at a hearing on
20 April 30th, 2021, before a new ALJ, that being ALJ John P.
21 Ramos.  ALJ Ramos issued an unfavorable decision on June 15,
22 2021.  ALJ Ramos's June 15, 2021 decision became the
23 Commissioner's final determination after the Appeals Council
24 denied Plaintiff's request for review on February 3rd, 2022.
25         This action was commenced on March 3, 2022, and it

is timely.

In his June 15, 2021 decision, ALJ Ramos first determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2019, and he then commenced the familiar five-step test for determining disability.

At step one, ALJ Ramos concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 8, 2013.

At step two, ALJ Ramos concluded that Plaintiff had the following severe impairments, those being residuals of breast cancer treatment with impairment of right shoulder; degenerative joint disease of the left shoulder; degenerative disc disease of the lumbar and cervical spine; and depressive disorder.

At step three, ALJ Ramos concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Sections 404.1520(c) and 416.920(c). In making this determination, the ALJ considered listings at 1.15, dealing with disorders of the skeletal spine; listing 1.16, dealing with lumbar spinal stenosis; listing 1.18, dealing with abnormality of major joint; and listing 13.10, dealing with breast cancer.

Next, the ALJ determined that Plaintiff has the

residual functional capacity, also referred to as RFC, to perform less than the full range of light work. Specifically, the ALJ found Plaintiff can occasionally reach overhead with both upper extremities; stand or walk for six hours in an eight-hour workday for up to two hours at a time; sit for six hours in an eight-hour workday; frequently climb stairs and ramps but never climb ladders, ropes, or scaffolds; and frequently balance, crouch, crawl, and stoop. The ALJ found Plaintiff can understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention and concentration for simple tasks; and regularly attend to a routine and maintain a schedule.  The ALJ also found Plaintiff can interact with supervisors on an occasional basis after learning her job duties from an instructional or demonstration lesson; can work in proximity to coworkers but should only have brief occasional interaction with coworkers and should have no contact with the public.  Finally, the ALJ found Plaintiff can make decisions directly in the performance of simple work and should work in a position where they are not responsible for the work of or required to supervise others.

At step four, the ALJ relied on the vocational expert testimony to determine that Plaintiff was unable to perform any past relevant work.

1       Again relying on the vocational expert testimony,
2  the ALJ found that considering Plaintiff's age, education,
3  work experience, and RFC that there are jobs that exist in
4  significant numbers in the national economy that she can
5  perform.  More specifically, the vocational expert testified
6  that Plaintiff can perform the requirements of
7  representative occupations such as cleaner, housekeeper,
8  garment folder, and scrap separator.  Accordingly, the ALJ
9  found that Plaintiff was not disabled from the alleged onset
10 date of October 8, 2013 through the date of the ALJ's
11 decision.
12      Now turning to the plaintiff's argument as set
13 forth in Plaintiff's brief, I begin as follows.  First, as
14 the parties know, this Court's functional role in this case
15 is limited and extremely deferential.  The Court must
16 determine whether correct legal principles were applied and
17 whether the determination is supported by substantial
18 evidence, defined as such relevant evidence as a reasonable
19 mind would find sufficient to support a conclusion.  As the
20 Second Circuit noted in Brault v. Social Security
21 Administration Commissioner, found at 683 F.3d 443, a 2012
22 case, therein the Circuit indicated this standard is
23 demanding, more so than the clearly erroneous standard.  The
24 Court noted in Brault that once there is a finding of fact,
25 that fact can be rejected only if a reasonable fact-finder

would have to conclude otherwise.

Plaintiff in this case in their brief raises three primary contentions. First, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence related to Plaintiff's ability to reach with her upper extremities.

Second, Plaintiff alleges and argues that the ALJ failed to properly evaluate the vocational expert testimony.

And then, third, Plaintiff argues that the ALJ's handling of Plaintiff's objections to the vocational expert testimony demonstrated bias that tainted the ALJ's -- that tainted the degree of disability determination as made by the ALJ.

The Court begins its analysis as follows. The ALJ considered two medical opinions that directly addressed Plaintiff's reaching ability. Dr. S. Putcha, a state agency consultant, reviewed Plaintiff's then current medical records as after May 27, 2014 and prepared an opinion regarding Plaintiff's physical impairments. He summarized Plaintiff's history of breast cancer treatment including chemotherapy, radiation, double mastectomy, and reconstructive surgery. Based on this history, Dr. Putcha opined that Plaintiff had limited ability to reach overhead or reach in front and/or laterally but could perform light, one-arm work on a sustained basis. The Court notes at this juncture that the ALJ also assigned varying weights to

opinions from Plaintiff's treating oncologist, Plaintiff's therapist, and several physical and psychiatric consultative examiners, but Plaintiff has not challenged the ALJ's evaluation of that evidence.

ALJ Ramos called Dr. Steven Goldstein as an independent medical expert to testify at the April 30th, 2021 hearing.  Dr. Goldstein summarized Plaintiff's medical record, including a recent diagnosis of degenerative disc disease and imaging reports from April 2020 showing tears in her right and left rotator cuff.  Based on this review, Dr. Goldstein's opinion included a limitation to occasional overhead lifting with the right and left arm but otherwise imposed no limitations on Plaintiff's use of her upper extremities.  Dr. Goldstein testified that he based his opinion on the medical record as well as his own experience treating patients with similar injuries.

The ALJ assigned "great weight" to Dr. Goldstein's opinion and incorporated most of his opined limitations, including occasional overhead reaching, into his RFC determination.  The ALJ assigned no specific weight to Dr. Putcha's opinion but rejected the additional limitations on lateral and forward reaching as inconsistent with Dr. Goldstein's testimony and the documented improvement in Plaintiff's condition as reflected in medical records post dating Dr. Putcha's review.

1     Plaintiff contends that the ALJ erred by failing
2  to assign a specific weight to Dr. Putcha's opinion and by
3  failing to incorporate additional reaching limitations into
4  the RFC.  This court rejects both of those arguments.
5     Even though the ALJ failed to assign a particular
6  weight to the state agency consultant's opinion, he
7  reasonably, that being the ALJ reasonably explained that
8  Dr. Putcha's May 2014 review was limited to records close in
9  time to Plaintiff's recovery from breast cancer and surgery
10 and that Dr. Goldstein's less restrictive opinion was more
11 consistent with the overall treatment record and supported
12 by Dr. Goldstein's hearing testimony, including
13 cross-examination by Plaintiff's counsel.  See, for example,
14 case of Buscemi v. Colvin, that's 13-CV-6088P, and that's
15 found at 2014 Westlaw 4772567 at page 13, and that's a
16 Western District New York September 24, 2014 case, therein
17 finding that ALJ's failure to assign a specific weight to
18 medical opinion was harmless because the decision reliably
19 demonstrates that the ALJ afforded some weight to that
20 opinion but afforded other opinions greater weight because
21 of greater consistency with the record evidence.  As part of
22 his decision, the ALJ highlighted examination reports from
23 June 2014, September 2016, and March of 2020 showing, quote,
24 very good to full, end quote, range of motion in both of
25 Plaintiff's shoulders despite lingering pain and were thus

consistent with Dr. Goldstein's less restrictive opinion.

In resolving the conflict between Dr. Putcha and Dr. Goldstein's assessments of Plaintiff's functional limitations, the ALJ was exercising his authority to choose between properly submitted medical opinions and explained his reasons for doing so.  It is well-established that it is the province of the ALJ to resolve such conflicts in the evidence.  Therefore, this court will not reweigh the evidence and finds no grounds for remand arising from the ALJ's evaluation of the medical opinion evidence.

Plaintiff raises two challenges to the vocational expert testimony.  First, Plaintiff contends that the ALJ did not adequately resolve conflicts between the vocational expert's description of representative job requirements and the Dictionary of Occupational Titles, which is also referred to as the DOT.  Second, Plaintiff argues that the vocational expert overestimated the number of jobs available for an individual with Plaintiff's RFC.  This court finds neither of those arguments persuasive.

The DOT is published by the Department of Labor and provides detailed descriptions of the requirements for a variety of jobs.  At the April 30th, 2021 hearing, the vocational expert testified that Plaintiff could perform representative occupations of cleaner/housekeeper, also garment folder, and scrap separator.  Consistent with the

1  regulations and case law, the ALJ asked the vocational
2  expert whether his testimony conflicted in any way with the
3  DOT.  In response to questioning from the ALJ and
4  Plaintiff's counsel, the vocational expert testified that
5  the, quote, no public contact, end quote, restriction in the
6  RFC was not directly addressed by the DOT but that he had
7  relied on a number of factors that can generally be
8  characterized as professional experience in evaluating the
9  RFC's compatibility with the various job listings in the
10 DOT.  This included direct observation of the work as
11 generally performed and interviews with employees who
12 performed those jobs, as well as review of the job
13 requirements in the DOT and the related standard
14 occupational classification system developed by the
15 U.S. Bureau of Labor Statistics.  The ALJ referenced these
16 factors in his evaluation of the vocational expert's
17 testimony and thus had a reasonable basis for deeming the
18 vocational expert's conclusions to be reliable.  In light of
19 this testimony and the associated analysis, this court finds
20 this case distinguishable from its remand order in
21 Robert G. v. Saul, found at 19-CV-576, Northern District New
22 York August 4, 2020.  In that case the vocational expert
23 provided no explanation for an apparent conflict between his
24 testimony addressing the level of social interaction
25 required for a particular job and the DOT.

    The vocational expert testified that each of the representative occupations existed in significant numbers in the national economy.  Specifically he relied upon the Department of Labor's Occupational Employment Statistics, also referred to as OES, estimates of 418,000 housekeeping jobs, 69,056 garment folder jobs, and 31,125 separator jobs.  In response to questioning from Plaintiff's counsel, the vocational expert provided greater detail into the -- his methodology for estimating jobs, explaining that he compared the OES quarterly estimate for jobs in the national economy against the applicable DOT and SOC job classification codes.  The vocational expert further testified that he recognized that the precision of these estimates was impacted by the broad scope of some of these job classification codes but, in his professional opinion, the approach still produced the most reliable estimate of available jobs.

    During this questioning, Plaintiff's counsel presented alternative job calculation figures derived from Job Browser Pro and Skill Tran software programs, suggesting far fewer jobs were available in the representative occupations.  In response, the vocational expert challenged the accuracy of these alternate estimates.  The vocational expert explained that he generally found those software programs unreliable because the developers fail to disclose the methodology behind their estimates.  He also found the

specific numbers cited by Plaintiff's counsel to be inconsistent with his knowledge of the applicable industries and the overall job market.

Plaintiff contends that the hearing transcript demonstrates that the vocational expert's testimony regarding available jobs is poorly supported and unreliable and that the ALJ's reliance upon that testimony is an error requiring remand.  This court rejects that contention.  The record demonstrates that the vocational expert had appropriate professional expertise and experience.  His testimony described his application of that professional expertise and experience to the RFC determination, along with his general methodology for estimating available jobs in response to extensive questioning from vocational expert and Plaintiff's counsel.  Therefore, the ALJ had substantial evidence to support his step five determination under the standards articulated by the Supreme Court and the Second Circuit.  See case of Biestek vs. Berryhill, 139 Supreme Court 1148, that's a 2019 Supreme Court case, noting that an ALJ may properly consider a vocational expert's professional qualifications, coherent testimony, and general explanation of methodology as substantial evidence to support job estimates.  See also case of McIntyre v. Colvin, that's found at 758 F.3d 146 at page 152.  That's a Second Circuit 2014 case, and therein finding that ALJ had reasonably

1   relied on vocational testimony based upon professional
2   experience, clinical judgment, and consistency with record.
3           Plaintiff's assertion that the Job Browser Pro and
4   Skill Tran software provided a better approach does not
5   alter that conclusion, particularly where the vocational
6   expert explained why he found the software unreliable.  See
7   case of Galiotti v. Astrue, that's 266 Fed Appendix 66 at
8   page 68.  That's a Second Circuit 2008 case.  And therein
9   finding step five determination supported by substantial
10  evidence despite Plaintiff's objection to vocational
11  expert's vague explanation of how he estimated the number of
12  available jobs.  See also case of Diaz v.Berryhill,
13  17-CV-735, and that is found at 2018 Westlaw 4462366 at
14  page 9, and that's a District of Connecticut September 18,
15  2018 decision.  And therein the court finding that
16  substantial evidence supported step five determination
17  despite Plaintiff's objection to methodology employed by the
18  vocational expert.  Also see case of Frazier v. Commissioner
19  of Social Security, 16-CV-4320, that's found at 2017
20  Westlaw 1422465 at page 19, that's a Southern District New
21  York April 20th, 2017 case, and therein the court rejecting
22  Plaintiff's objection to vocational expert's use of Skill
23  Tran software to estimate job numbers.
24          Plaintiff further contends that the ALJ exhibited
25  bias in his consideration and overruling of her objection to

the vocational expert testimony.  The hearing transcript shows that the ALJ interrupted Plaintiff's counsel during her questioning of the vocational expert because, quote, it is repetitive and I understand what you are getting at, end quote.  The ALJ also challenged Plaintiff's counsel to provide additional evidence to support her alternative job numbers.  In his decision, the ALJ formally overruled Plaintiff's objection to the vocational expert testimony and characterized her counsel as, quote, essentially acting as an unqualified vocational expert and witness, end quote, during this hearing before the ALJ.

There is a rebuttable presumption that an ALJ has acted in an unbiased manner.  While the ALJ's handling of the Plaintiff's objections to the vocational expert testimony can fairly be described as contentious or confrontational, Plaintiff has not shown the extreme hostility or prejudice required to support an allegation of bias.  Indeed, although the ALJ prematurely ended counsel's line of questioning regarding the estimated job numbers, he allowed Plaintiff an opportunity to submit written arguments and analyzed the dispute at length as part of the step five determination.  Because the ALJ marshalled substantial evidence to support his resolution of this question, this court does not find any bias in his determination.  Although Plaintiff highlights evidence that may support each of her

1   arguments, as long as the disability determination is
2   supported by substantial evidence, which it is here, this
3   court finds that it is, then the court must affirm the
4   Commissioner's determination.
5           As a result and based upon this reasoning and
6   analysis, it is the decision of this court that Plaintiff's
7   motion for judgment on the pleadings is denied.  Defendant's
8   motion for judgment on the pleadings is granted.
9   Plaintiff's complaint is dismissed.  And the Commissioner's
10  decision denying Plaintiff benefits is affirmed.
11          This constitutes the analysis, reasoning, and
12  decision of this court.
13                          - - - - -

```
 1                CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4       I, RUTH I. LYNCH, RPR, RMR, NYS Realtime Certified

 5   Reporter, Federal Official Court Reporter, in and for the

 6   United States District Court for the Northern District of

 7   New York, DO HEREBY CERTIFY that pursuant to Section 753,

 8   Title 28, United States Code, that the foregoing is a true

 9   and correct transcript of the stenographically reported

10   proceedings held in the above-entitled matter and that the

11   transcript page format is in conformance with the

12   regulations of the Judicial Conference of the United States.

13

14

15

16
                 /s/ Ruth I. Lynch
17
                 RUTH I. LYNCH, RPR, RMR, NYSRCR
18               Official U.S. Court Reporter

19

20

21

22

23

24

25
```